David H. FANDEL and Dawn C. Fandel, as Trustees of the D & D Foundation Trust dated October 2, 2000, Respondents,

v.

The EMPIRE DISTRICT ELECTRIC COMPANY, Appellant.

No. SD 31966.

Missouri Court of Appeals, Southern District, Division One.

Jan. 23, 2013.

Harry Styron, Branson, MO, for Respondents.

Mark A. Fletcher, Springfield, MO, for Appellant.

WILLIAM W. FRANCIS, JR., J.

The Empire District Electric Company ("Empire") appeals the trial court's grant of summary judgment in favor of David H. Fandel and Dawn C. Fandel, as Trustees

of the D & D Foundation Trust dated October 2, 2000 ("the Trust"). Empire now asserts three points on appeal. We find the third point dispositive and reverse the judgment and remand for further proceedings.

## Factual and Procedural Background

On May 6, 2010, the Trust filed its "Petition for Quiet Title, Adverse Possession, Termination of Easement, and Damages for Inverse Condemnation" against Empire. In its petition, the Trust set out that it purchased—via quitclaim deed—a certain parcel of real estate ("the disputed property") from Adobe L.L.C., on December 18, 2007, and recorded that deed on March 3, 2008.[1] It related that several weeks following the recordation, it received a letter from Empire "asserting that Empire was the owner of a portion of the Trust's Parcel on the basis of being successor in title to Ozark Power & Water, the grantee of a ... deed from Eli and Lola Hoenshel" executed in 1912 and filed with the Taney County recorder in 1913.[2] Empire asserted in its letter that it basically owned from the shoreline of Lake Taneycomo, typically around 702 feet above sea level, to a point 715 feet above sea level upon the high bank of the lake. The Trust stated in its petition that Empire's letter mischaracterized the nature of its ownership interest, if any, in that the deed from the Hoenshels to Ozark Power & Water was merely a flowage easement or flowage deed in that it contained the limitation that the interest was for "all lake purposes in connection with the dam being constructed on the White River[,]" as well as the reservation that "said right reserved by the [grantors] to remove the fences and occupy said land down to the actual water line as aforesaid at their own risk of damage whatsoever."[3] The petition then asserted four counts against Empire: Count I for a declaratory judgment; Count II for adverse possession based on the fact that there had been buildings located on the disputed property since before 1966, the Trust's predecessors in interest had been in hostile, visible, open, and notorious possession of the disputed property since that time, and Empire had never previously made a claim to an interest in the disputed property; Count III for "Termination of Flowage Easement by Full or Partial Abandonment" due to Empire's failure to use the easement in any manner; and Count IV for inverse condemnation in that Empire's sudden decision to use the disputed property, which the Trust asserts it had abandoned, amounts to a taking without compensation. As a result of the foregoing, the Trust asked the trial court to "declare that the 1913 quitclaim deed by which Empire claims title to a portion of the Trust's real estate merely conveyed a flowage easement rather than fee title"; "affirm the superiority of its title to the [disputed property] on the basis of adverse possession[ ]"; "determine that the flowage rights of Empire have been terminated, in

1. There is a lakeside resort operated upon the disputed property.

2. The Trust traces its interest in the disputed property from the foreclosure of a deed of trust between the Hoenshels and Vernon Todd in 1914.

3. In addition to the 1913 deed, there was an earlier deed between the Hoenshels and Ozark Power & Water that contained numerous mentions of the grant of flowage rights and an amount of consideration of $300. Empire asserted in its pleadings that the earlier 1911 deed was a flowage deed granting Empire an easement over the disputed property and that the later 1913 deed, for which $1,200 in consideration was paid, granted fee ownership of the property to Empire with an easement to the Trust's predecessor in interest.

whole or in part by abandonment, completion of purpose, or adverse possession[ ]"; and "award damages to the Trust for the inverse condemnation resulting from the loss of property rights due to the extent of ownership or control that Empire now wishes to exert on the basis of its federal hydropower license ... [.]" In its Answer to the Trust's petition, Empire asserted the following affirmative defense:

Count I of [the Trust's] Petition is barred by [section] 516.090, [RSMo Cum.Supp.2006,] which provides, in part, 'this section shall be construed to prohibit any judgment granting adverse possession to a claimant where the defendant possesses an interest in land described in the recorded deed and is a public utility as defined in [s]ection 386.020.' Empire states that it possesses an interest in the [disputed] property which is described in the recorded deed, and that it is a public utility as defined in [s]ection 386.020, such that [s]ection 516.090[, RSMo Cum.Supp.2006,] prohibits any judgment granting adverse possession to [the Trust].[4]

The Trust filed its "Motion for Summary Judgment on Counts I and II and Statement of Facts" on June 9, 2011. The Trust asserted it had adversely possessed the disputed property through its predecessors from 1982 to 2000 and in support of its claim, it offered the affidavits of two of those predecessors. Based on the aforementioned affidavits, the Trust maintained in its motion for summary judgment that

possession of the [d]isputed [p]roperty above 708 feet by the Trust and its predecessors in title was open, hostile, notorious and continuous for periods greater than 10 years before section 516.090 was amended (S.B. 1045, enacted June 12, 2006, effective 90 days after adjournment) to confer immunity to public utilities against divestment of title through the application of the doctrine of adverse possession.

It further related the "Trust and its predecessors in title have always paid real estate taxes on all or substantial portions of the [d]isputed [p]roperty and maintained it[,]" while Empire has "paid taxes on a portion of the [d]isputed [p]roperty only for years 1998, 2006, 2007, 2008 and 2009[,] ... but not any improvements on the [d]isputed [p]roperty (other than electrical power equipment)."

The trust relied upon the affidavits of Ronnie J. Kliewer and Gordon Forsythe to prove up the element of actual possession in its predecessors. In oral argument, the Trust admitted the affidavits might have been used by the trial court to infer a conclusion of actual possession and intent to exclude others from control.

In its response to the motion for summary judgment, Empire denied through proof that the Trust received title to the property from Adobe, L.L.C., in that it was the property owner pursuant to the 1913 deed from the Hoenshels; "the language in the 191[3] Deed 'all for lake purposes in connection with the dam being

---

4. Prior to the amendment of section 516.090, RSMo Cum.Supp.2006, the previous version of the statute simply stated: "Nothing contained in any statute of limitation shall extend to any lands given, granted, sequestered, or appropriated to any public, pious, or charitable use, or to any lands belonging to this state." § 516.090. The 2006 amendment added a second sentence to the statute: "This

section shall be construed to prohibit any judgment granting adverse possession to a claimant where the defendant possesses an interest in land described in a recorded deed and is a public utility as defined in section 386.020 ... [.]" § 516.090, RSMo Cum.Supp. 2006.

Hereinafter when cited, § 516.090 references RSMo Cum.Supp.2006.

constructed on the White River,' describes the extent of the grant of said Deed[ ]"; the Trust could bring such an action against it due to the amendment to section 516.090; the affidavits of the Trust's predecessors in interest supported the "allegation that [the Trust] and its predecessors in title have always paid real estate taxes on all or substantial portions of the [d]isputed [p]roperty and maintained it[ ]"; and denied Empire paid taxes on the disputed property for only those years listed by the Trust.[5] Empire argued the language in the 1913 deed relating to " 'for lake purposes' " does not limit the entirety of the conveyance to one specific purpose nor does it interfere with the grant of fee simple title, which it asserts was actually granted by the 1913 deed. Further, on the issue of the application of section 516.090, Empire pointed out that the Trust argued the statute is unconstitutional as applied to it because it had a vested interest in the property prior to the amendment taking effect in 2006 such that a retroactive application of the law would be unconstitutional. Empire, on the other hand, maintained the statute was procedural in nature and simply removes the ability of the trial court to enter judgment against a public utility utilizing the remedy of adverse possession. Empire asserted the Trust misread the statute in that section 516.090 "does not purport to take away or invalidate any interest [the Trust] may have acquired as a result of adverse possession prior to its enactment. Rather the statute acts prospectively to bar courts from entering a judgment quieting title in favor of an adverse possession plaintiff where the defendant is a public utility." Further, Empire asserted the Trust's motion for summary judgment "fails to establish that it was in 'actual' possession of the disputed property" as "[n]one of [the Trust's] affidavits proves the intent of [the Trust] and its predecessors to exclude others from the land. Rather, each affidavit avers that no one else was in possession of the property."

The trial court entered its judgment on December 12, 2011. As for Count I, the request for a declaratory judgment, the trial court found "there is a patent ambiguity in the [1911 and 1913 deeds between Empire's predecessor in interest and the Hoenshels] and that parole evidence is necessary to interpret them. Thus, there are genuine issues in controversy and summary judgment is denied as to Count I." As for Count II, the adverse possession count, the trial court concluded, based in part on *Empire Dist. Elec. Co. v. Gaar*, 26 S.W.3d 370 (Mo.App. S.D.2000), that section 516.090 "affects substantive property rights and should only be applied prospectively." As such, it found that because the statutory period for acquiring adverse possession is ten years, "title became vested in [the Trust's] predecessors in title by adverse possession on January 4, 1992." It then concluded "[t]he pleadings on file, together with [the Trust's] Affidavits in support of [its] Motion for Summary Judgment for Count II, show there is no genuine issue as to any material fact as to Count II and thus [the Trust] is entitled to judgment in [its] favor upon Count II . . . as a matter of law." The trial court found that "any interest[s] of . . . Empire in the [d]isputed [p]roperty as conveyed by the Hoenshel–Ozark Power deeds, have been terminated by adverse possession and have vested in the [Trust] above the elevation of 708 feet above mean sea level." This timely appeal followed.

---

5. Empire admitted throughout these proceedings that it has no written records of its physical possession of the disputed property nor does it have all the tax records from the years it paid taxes on the disputed property.

The issue presented for our determination is: Did the trial court err in entering summary judgment in favor of the Trust because it concluded the Trust's predecessors demonstrated actual possession of the property to support adverse possession? We conclude the trial court did err.

## Standard of Review

Appellate review of a grant of summary judgment is *de novo*. *Kinnaman–Carson v. Westport Ins. Corp.*, 283 S.W.3d 761, 764 (Mo. banc 2009). Summary judgment will be upheld on appeal if there is no genuine issue of material fact and movant is entitled to judgment as a matter of law. *ITT Comm'l Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). When the moving party in a summary judgment motion is the claimant or plaintiff that party "must establish that there is no genuine dispute as to those material facts upon which the 'claimant' would have had the burden of persuasion at trial." *Id.* at 381. Thereafter, the non-movant may not rest upon the allegations and denials of the pleadings, but rather must use affidavits, depositions, answers to interrogatories, or admissions on file to show the existence of a genuine issue for trial. *Id.*

■ Under our standard of review, we review "the record in the light most favorable to the party against whom summary judgment was entered." *Kinnaman–Carson*, 283 S.W.3d at 764. " 'The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially.' " *Id.* (quoting *ITT Comm'l*, 854 S.W.2d at 376). Summary judgment is an extreme and drastic remedy and we exercise great caution in affirming it because the procedure cuts off the opposing party's day in court. *ITT Comm'l*, 854 S.W.2d at 377.

## Analysis

■ In its Point III, Empire asserts the trial court erred because it erroneously applied the law as to adverse possession in that the Trust failed to prove actual possession. We agree. In order to establish its claim for adverse possession, the Trust was required to prove actual, hostile, open and notorious, exclusive, and continuous possession of the disputed property for ten years. *Sibley v. Eagle Marine Industries, Inc.*, 607 S.W.2d 431, 433 (Mo. banc 1980).

■ "Actual possession" requires evidence from a claimant "showing the present ability to control the land and [the] intent to exclude others from control." *Compton v. Cain*, 829 S.W.2d 75, 78 (Mo. App. S.D.1992) (internal quotation and citation omitted).

■ Here, the affidavits the Trust relied upon are insufficient to demonstrate actual possession as required for adverse possession. The affidavits do not provide any evidence the Trust's predecessors intended to exclude others from the land, nor any intent to exclude others from controlling the property. Each affidavit simply asserts that no one else was in possession of the property. This is particularly troubling when the Trust admits that on this issue, the trial court must have inferred this element from the affidavits. We observe that if an underlying issue is one of motivation, intent, or some other subjective fact, it is particularly inappropriate for summary judgment. *Ganaway v. Shelter Mut. Ins. Co.*, 795 S.W.2d 554, 562 (Mo.App. S.D.1990).

This error becomes even more pronounced when we consider our standard of review which requires us to review the record in the light most favorable to the

party against whom summary judgment was entered, in this case, Empire. *Kinnaman–Carson*, 283 S.W.3d at 764. In so viewing the evidence, Empire, as the non-moving party, is accorded the benefit of all inferences which may reasonably be drawn from the record. *Reeves v. Allstate Ins. Co.*, 327 S.W.3d 592, 595 (Mo.App. S.D. 2010).

We conclude that the trial court did err in entering summary judgment in favor of the Trust because it concluded the Trust's predecessors demonstrated actual possession of the property to support adverse possession. That proof was not present as submitted by the Trust and, therefore, the Trust did not establish it was entitled to judgment as a matter of law.

Because disposition of this appeal is completed by our analysis of Point III, it is not necessary to reach Empire's first two points.

The judgment of the trial court is reversed and remanded for further proceedings.

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., concur.