

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STEVEN TUCKER, | ) | No. ED102388 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| MICHAEL S. VINCENT, et al., | ) | Hon. David Lee Vincent III |
| | ) | |
| Respondents. | ) | FILED: October 6, 2015 |

## Introduction

Appellant Steven Tucker ("Tucker") appeals from the trial court's grant of summary judgment in favor of Respondent Michael Vincent ("Vincent") on Tucker's petition for accounting malpractice and negligent misrepresentation against Vincent. On appeal, Tucker contends that if the trial court's grant of summary judgment was based upon a finding that Tucker's claims are subject to the mandatory arbitration provision in the Stock Purchase Agreement ("SPA") entered into between Tucker and Electromedico, LLC, then the trial court erred because Tucker's tort claims against Vincent are not subject to the SPA. Tucker further argues that if the trial court granted summary judgment because it found that Tucker's claims barred by res judicata, then the trial court erred because res judicata does not apply to this action. Lastly, Tucker maintains that if it is necessary to determine the basis of the trial court's summary

judgment ruling, we must find that the trial court limited its ruling to a finding that Tucker must pursue his claims in arbitration.

Because no valid agreement to arbitrate existed between Tucker and Vincent, and because the limited circumstances under which a non-party to an arbitration agreement may compel arbitration are not present here, Tucker's claims are not subject to mandatory arbitration. Because there is no identity of parties between the Florida arbitration proceeding and Tucker's present lawsuit, and no identity of the causes of action filed in Pinellas County and Tucker's present lawsuit, Tucker's claims for accounting malpractice and negligent misrepresentation are not barred by the principles of res judicata. Accordingly, the trial court erred in granting summary judgment. We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

Factual and Procedural History

## I. The 2007 SPA

In 2001, David Tucker ("David"),[1] Tucker's brother, started a business called Electromedical Solutions, Inc. ("ESI"). Tucker later purchased 49 percent of ESI's shares with the intention of serving as a passive investor in the company. Throughout this time, Vincent served as David's personal accountant and the accountant for ESI. Vincent also was Tucker's personal accountant during this time.

In 2007, David decided to sell ESI. David and Tucker each owned 49 percent of the shares of ESI, while a third party, Dorothy Quinn ("Quinn") owned the remaining two percent. Vincent emerged as a prospective buyer, and the SPA was structured and consummated to that effect. Under the terms of the SPA, dated June 26, 2007, David, Tucker, and Quinn sold their

---

[1] David Tucker is referred to by first name to avoid confusion with the appellant in this case. This Court intends no disrespect in doing so.

2

respective shares of ESI to Electromedico, LLC ("Electromedico"), an entity formed by Vincent. The total purchase price paid by Electromedico for all of the shares of ESI was $1,250,000. David, Tucker, and Quinn were listed as the Sellers; each signed the SPA in their individual capacities. Electromedico was listed as the Buyer; Vincent signed the SPA on behalf of Electromedico, as its Manager. The SPA contained an arbitration clause which read, in relevant part:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Rules of Arbitration and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

## II. Florida Proceedings

In 2009, Electromedico filed suit against both David and Tucker in Florida alleging breach of representations and warranties in the SPA regarding the value of ESI's assets transferred as part of the sale. In accordance with the arbitration clause in the SPA, the claims were submitted to binding arbitration. In 2011, Electromedico filed a statement of claim with the American Arbitration Association ("AAA"). The statement of claim alleged that, following execution of the SPA, Vincent discovered that David and Tucker had not fully disclosed certain information about ESI and had made certain misrepresentations about the value of ESI. Specifically, Electromedico alleged that the amount of accounts receivable for ESI was much lower than the amount represented by David and Tucker. Electromedico also alleged that ESI did not own certain assets itemized on its financial statements, and that there were issues with ESI's customer accounts.

David and Tucker filed an answer to the claim of arbitration. In their answer, they asserted numerous affirmative defenses, including that Electromedico failed to act with due

3

negligence in running ESI; that Electromedico had equal or greater access to the means of verifying any representations made by David and Tucker; and that the complained-of "representations" were mere opinion or "puffing." Finally, David and Tucker asserted that they were entitled to a setoff against any recovery by Electromedico due to the undervaluation of ESI when it was sold to Electromedico. David and Tucker alleged that Vincent undervalued ESI when he represented to them that $1,250,000 was the fair value of ESI, when in fact ESI had a significantly greater value.

While the arbitration proceeding was pending, David and Tucker filed a lawsuit against Vincent and his accounting firm in the Circuit Court of Pinellas County, Florida. In their lawsuit David and Tucker asserted claims for professional negligence and failure to comply with a request for insurance information, the latter claim a violation of Florida statute.[2] David and Tucker alleged that Vincent offered to buy all of the outstanding shares of ESI for $1,250,000 and told Tucker that $1,250,000 represented the fair value of ESI. David and Tucker alleged that they relied on Vincent's knowledge of and familiarity with ESI, accepted and relied upon his valuation of the company, and entered into the subsequent SPA with Electromedico with $1,250,000 as the purchase price. David and Tucker further alleged that they became aware in 2012 that ESI had been undervalued by Vincent and was worth substantially more than the purchase price.

In support of their professional negligence claims, David and Tucker averred that both Vincent and his accounting firm had a duty to exercise reasonable professional care, including the specific duties of objectivity and integrity; a duty to refrain from knowingly misrepresenting facts to clients; and a duty to obtain sufficient relevant data to afford a reasonable basis for any conclusions, advice, or recommendations made to clients. David and Tucker alleged that

---

[2] David and Tucker's latter claim is irrelevant to our analysis.

4

conclusions, advice, or recommendations made to clients. David and Tucker alleged that Vincent and his firm breached these duties by acting negligently in the following ways: (1) by acquiring a direct financial interest in ESI (through Electromedico) during the time of Vincent's professional engagement as ESI's accountant; (2) by using his position as their accountant to influence David and Tucker for his own personal gain by suggesting that the fair value of ESI was only $1,250,000; (3) by failing to recommend retaining another CPA or expert to provide advice in evaluating Electromedico's purchase offer of $1,250,000; (4) by failing to use reasonable care in valuing ESI; (5) by failing to obtain sufficient data to make a recommendation on the fair value of ESI; (6) by knowingly misrepresenting the value of ESI to David and Tucker prior to the sale of ESI to Electromedico; (7) by representing to David and Tucker that $1,250,000 was the fair value of ESI when Vincent knew they would accept that valuation as true, and when the true value was, in fact, much higher; and (8) by making fraudulent representations in violation of various Florida statutes.

On May 18, 2012, while the arbitration proceeding was pending but subsequent to David and Tucker filing suit in Pinellas County against Vincent, David and Tucker filed a motion in the pending arbitration for leave to amend to add a third-party claim. The motion sought leave to amend the pleadings in the arbitration proceeding to assert against Vincent, who was not a party to the arbitration proceeding, the same claims David and Tucker brought against Vincent in the Pinellas County lawsuit. The motion noted that the final arbitration hearing was set for May 21, 2012. The arbitration hearing proceeded as scheduled on May 21, 2012. The arbitration panel never granted David and Tucker leave to amend their pleadings.

Following the final arbitration hearing, the arbitration panel entered an award of $1,070,743.09 in favor of Electromedico against David and Tucker, jointly and severally. A

5

judgment confirming the arbitration award was subsequently entered. In October of 2013, after the arbitration panel's final award, David and Tucker's Pinellas County lawsuit was dismissed with prejudice.

**III. Tucker's 2013 Missouri action against Vincent**

In December of 2013, Tucker filed suit against Vincent and Vincent's accounting firm (collectively referred to throughout this opinion as "Vincent') in the Circuit Court of St. Louis County. Tucker's petition asserted claims against Vincent for accounting malpractice (Count I) and negligent misrepresentation (Count II). Tucker's petition alleged that in 2007, when David decided to sell ESI, Vincent expressed an interest in buying the company. The petition further alleged that, while Vincent's purchase of ESI was being considered, but before it was consummated, David, Tucker, and Vincent held a conference call. During that call, Tucker stated his desire to have the transaction structured so that Tucker would first transfer his interest in ESI to David, and that the ESI purchase and sale agreement would then proceed between Vincent and David. Tucker alleged in his petition that he asked Vincent, as his accountant, whether the transaction could be structured in that manner, and that Vincent advised Tucker it could not. Tucker's petition alleged that the transaction could have been structured the way Tucker desired.

In support of his claim of accounting malpractice, Tucker alleged that Vincent, as Tucker's accountant, breached his duty to render accounting services in a proper, skillful, and careful manner by (1) advising Tucker that the sale of ESI could not be structured in the way Tucker desired; and (2) omitting to tell Tucker, and concealing from him, that Vincent wanted Tucker to participate in the transaction because it would be beneficial to Vincent. Similarly, in support of his claim of negligent misrepresentation, Tucker alleged that Vincent made negligent

6

misrepresentations and omissions to Tucker in connection with the purchase and sale of ESI; specifically, that Vincent (1) misrepresented to Tucker that the sale of ESI could not be structured in the way Tucker desired; and (2) omitting to tell Tucker, and concealing from him, that Vincent wanted Tucker to participate in the transaction because it would be beneficial to Vincent.

Vincent filed a motion for summary judgment, raising two arguments in support of his motion. First, Vincent asserted that all of Tucker's claims were covered by the SPA and subject to the arbitration clause contained therein. Therefore Tucker's claims should be compelled to arbitration as a matter of law. In support of this argument, Vincent noted that Tucker's claims "directly arise from the sale of ESI to Electromedico," and reasoned that the arbitration clause in the SPA "should be interpreted so as to encompass any kind or type of claim relating to the purchase or sale of ESI." Vincent further argued that because Tucker's claims take issue with alleged communications and advice regarding the structure of the ESI sale, the claims "clearly arise out of and relate to" the SPA. Vincent maintained that the arbitration clause in the SPA is "worded broadly," compelling arbitration of "any controversy or claim arising out of or relating to" the SPA.

In the alternative, Vincent requested summary judgment in his favor based on the doctrine of res judicata. Specifically, Vincent argued that Electromedico's 2009 lawsuit in Florida and the subsequent Florida arbitration proceedings barred Tucker from relitigating his claims in the 2013 Missouri lawsuit. Vincent posits that Tucker's claims asserted in the Missouri lawsuit arose out of the same transaction and contract as the claims adjudicated in the Florida arbitration—the negotiation and execution of the SPA. Vincent further argued that Tucker's claims in the 2013 suit were "very similar to the claims and issues previously decided in the

7

Florida arbitration" because the claims pertained to alleged advice and consultation related to the SPA. For these reasons, Vincent concluded that the claims in Tucker's 2013 lawsuit "clearly arise out of the same transactions and occurrences as the claims and counterclaims in the Florida arbitration."

On October 31, 2014, the trial court entered a Judgment and Order granting Vincent's motion for summary judgment. The trial court did not specify the grounds for its judgment. Instead, the judgment simply stated that the trial court, "being advised in the premises, grants and sustains defendant's motion for summary judgment," and that as a result, "all claims in plaintiff Steven Tucker's petition are dismissed with prejudice." This appeal follows.

<u>Points on Appeal</u>

Tucker presents three points on appeal. First, Tucker contends that, if the trial court's grant of summary judgment was based on the premise that Tucker's claims are subject to mandatory arbitration under the SPA, the trial court erred because Tucker's claims fall outside the scope of the arbitration clause in the SPA. Specifically, Tucker reasons that Vincent is not a party to the SPA, and that Tucker's claims do not arise out of or relate to the SPA. Second, Tucker avers that if the trial court's grant of summary judgment was based on the premise that Tucker's claims are barred by res judicata, the trial court erred because Tucker's claims here are substantially different from those brought against Vincent in Florida by Tucker and David, and because the claims raised by Tucker in this lawsuit have not been litigated. Finally, Tucker contends that, should it be necessary to determine the basis of the trial court's rule granting summary judgment, it must be concluded the trial court ruled only that Tucker must pursue his claims in arbitration.

8

## Standard of Review

In order to obtain summary judgment, the moving party must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04.[3] On appeal, the propriety of a trial court's grant of summary judgment is a matter of law. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). As such, this Court reviews the grant of summary judgment *de novo*, giving no deference to the trial court's findings or determinations. Stanbrough v. Vitek Solutions, Inc., 445 S.W.3d 90, 96 (Mo. App. E.D. 2014). We review the record in the light most favorable to the party against whom judgment was entered and give the non-movant the benefit of all reasonable inferences from the record. Id. We will affirm where the pleadings, depositions, affidavits, answers to interrogatories, exhibits, and admissions establish that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.

Where the trial court does not specify the grounds upon which it granted a motion for summary judgment, the trial court is presumed to have based its decision on any or all of the grounds advanced by the movant in its motion for summary judgment. McCrary v. Truman Med. Ctr., Inc., 943 S.W.2d 695, 697 (Mo. App. W.D. 1997). The primary concern of this Court is the correctness of the result reached. Id. Accordingly, if we can sustain the trial court's judgment under any theory, we must do so. Irwin v. Wal-Mart Stores, Inc., 813 S.W.2d 99, 101 (Mo. App. W.D. 1991).

## Discussion

"Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no

---

[3] All rule references are to Mo. R. Civ. P.

9

genuine dispute, a right to judgment as a matter of law." ITT Commercial Fin. Corp., 854 S.W.2d at 376. Summary judgment, however, "is an extreme and drastic remedy" which we exercise great caution in affirming. Fandel v. Empire Dist. Elec. Co., 393 S.W.3d 100, 104 (Mo. App. S.D. 2013).

Vincent's motion set forth two arguments in support of summary judgment—first, that Tucker was compelled to submit his claims to arbitration due to the arbitration clause in the SPA; and second, that Tucker's claims were barred by the doctrine of res judicata. Because the trial court did not specify its grounds for granting Vincent's summary judgment, we will affirm the trial court's judgment if any theory advanced by Vincent supports summary judgment. Irwin, 813 S.W.2d at 101. Accordingly, we consider whether either of the grounds advanced by Vincent entitled him to judgment as a matter of law.

## I. Point One—Arbitration

The arbitration clause in the SPA states that it is subject to the Federal Arbitration Act ("FAA"), which governs the applicability and enforceability of arbitration agreements in all contracts involving interstate commerce. Eaton v. CMH Homes, Inc., 461 S.W.3d 426, 431 (Mo. banc 2015). The FAA expresses a federal policy "favoring resolution of disputes by enforcement of arbitration agreements." Bellemere v. Cable-Dahmer Chevrolet, Inc., 423 S.W.3d 267, 273 (Mo. App. W.D. 2013). However, "this policy is not enough, standing alone, to extend an arbitration agreement beyond its intended scope." Id. As the United States Supreme Court has recognized, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986); Dunn Indus. Grp., Inc. v. City of Sugar Creek, 112 S.W.3d 421, 435 (Mo. banc 2003). This bedrock principle "recognizes the fact that

10

arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." Id. at 648-49; see also State ex rel. Hewitt v. Kerr, 461 S.W.3d 798, 807 (Mo. banc 2015).

As a result, it is axiomatic that "a party cannot be compelled to arbitration unless the party has agreed to do so." Bellemere, 423 S.W.3d at 273; AT & T Technologies, Inc., 475 U.S. at 648; see also Jones v. Paradies, 380 S.W.3d 13, 17 (Mo. App. E.D. 2012) ("It is a firmly-established principle that parties can be compelled to arbitrate against their will only pursuant to an agreement whereby they have agreed to arbitrate claims."). Precisely because arbitration is, at its core, a matter of contract, the enforceability of an arbitration agreement "never comes into play if a contract itself was never formed." Bellemere, 423 S.W.3d at 273. Stated another way, "it logically follows that one cannot enforce an arbitration agreement if he is not a party to that agreement." Paradies, 380 S.W.3d at 17. The existence of a valid contract, therefore, is a prerequisite to the existence of an enforceable arbitration agreement. Thus, the first step of our analysis is to determine whether a valid contractual agreement to arbitrate was ever formed between Tucker and Vincent. AT & T Technologies, Inc., 475 U.S. at 649 ("[T]he question of whether the parties agreed to arbitrate is to be decided by the court.").

In conducting this analysis, we are required to "place arbitration agreements on an equal footing with other contracts," AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011), and to determine their validity by "applying state contract law principles." Hewitt, 461 S.W.3d at 807. Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate, and we employ "the usual rules of state contract law and canons of contract interpretation" in making that determination. Bellemere, 423 S.W.3d at 274.

11

In the lawsuit before us, Tucker has sued Vincent for malpractice and negligent misrepresentation in his individual capacity. Tucker asserts no claims against Electromedico. We note that while Tucker was a signatory to the SPA, which contains the arbitration clause in question, Vincent was not. The record shows that Vincent signed the SPA only in his capacity as manager of Electromedico. Although Vincent refers to himself as the "sole manager" of Electromedico, that fact alone, even if true, does not negate the legal distinction between Vincent's liability as the manager of Electromedico and Vincent's liability in his individual capacity.

The only arbitration agreement before us is contained within the SPA, a contract to which Vincent, in his individual capacity, was not a party. Only Tucker and Electromedico are parties and signatories to the SPA. Vincent, in executing the SPA on behalf of Electromedico, did not agree to arbitrate any personal claims or disputes between he and Tucker. Likewise, we find no indication in the SPA that Tucker intended to require that any future claims he may have against Vincent, as an *individual,* be submitted to mandatory arbitration. Consistent with this conclusion, Vincent signed the SPA solely in his capacity as manager of Electromedico, and not in a personal capacity. As noted, Tucker has asserted claims against Vincent only in his personal capacity.

It is well-settled that a person clearly signing a contract in a corporate capacity on behalf of a disclosed principal does not become a party, in his individual capacity, to the agreement. Headrick Outdoor, Inc. v. Middendorf, 907 S.W.2d 297, 300 (Mo. App. W.D. 1995). The difference between Vincent acting in his individual capacity and Vincent acting in his representative capacity as an officer of Electromedico is not a matter of semantics; the difference carries with it an important legal distinction. There is a meaningful legal difference between

12

bringing suit against someone in his individual versus corporate capacity.[4] Vincent's signature, made in his corporate capacity, does not subject him or entitle him to the rights and obligations of the SPA because he is not a party to the agreement. Paradies, 380 S.W.3d at 17.

The record before us is void of any evidence that Tucker and Vincent entered into any agreement to arbitrate their future disputes. Tucker and Electromedico undoubtedly did so, but the lawsuit before us presents only claims brought by Tucker against Vincent personally. Vincent's argument that his status as a non-party to the SPA has "no impact on his ability to compel arbitration" ignores the law that has been clearly and forcefully explained by our Supreme Court. See, e.g., Hewitt, 461 S.W.3d at 807 (stating the "fundamental principle that arbitration is a matter of contract" and explaining that "[i]f there is no valid arbitration clause… then there is no agreement to arbitrate"); Dunn Indus. Grp., Inc., 112 S.W.3d at 435 ("Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate"); State ex rel. Union Pac. R. Co. v. David, 331 S.W.3d 666, 667 (Mo. banc 2011) ("Arbitration is fundamentally a matter of consent"). Arbitration is first and foremost a matter of contract, and in the absence of any valid contract between Tucker and Vincent, there is simply no agreement to arbitrate between these two parties.

Vincent correctly notes that there are limited circumstances under which some courts have allowed a non-signatory to an arbitration agreement to enforce the arbitration agreement against a signatory. As explained by the Eighth Circuit, a non-signatory can enforce an arbitration clause against a signatory (1) "when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke

---

[4] See, e.g, Paradies, 380 S.W.3d 13. In Paradies, this Court distinguished between those lawsuits where corporate officer defendants are alleged to have been acting on behalf of the corporation in the course of their wrongdoing, and those lawsuits where corporate officer defendants are alleged to have been "acting for themselves—not for the corporation" in the course of their wrongdoing. Id. at 17-18. This Court explained that in the former types of cases, corporate officers are treated as the corporation, while in the latter, corporate officers are treated as individuals. Id.

13

arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided;" or (2) "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory." CD Partners, LLC v. Grizzle, 424 F.3d 795, 798 (8th Cir. 2005).[5]

Even if we were to follow the guidelines set forth by the Eighth Circuit in CD Partners, we find that neither of the circumstances presented in CD Partners is present in the case before us. The record does not compel a conclusion that the relationship between Electromedico and Vincent is so close with respect to the SPA that the arbitration agreement in the SPA will be "eviscerated" if Vincent is not allowed to compel Tucker to arbitration in this case. Moreover, Tucker does not rely on the terms of the SPA in asserting his individual claims against Vincent in this action.

Our holding is guided in part by the nature of the SPA. The SPA, unlike the employment agreements at issue in CD Partners, is a purchase agreement. In CD Partners, a franchisee brought a tort suit against three individuals who were principals of a franchisor, CDWI. The franchisee alleged negligence, negligent misrepresentation, and fraudulent misrepresentation arising out of franchise agreements between CDWI and CD Partners. The three principals of the franchisor were not signatories to the franchise agreements in their individual capacities, but sought to compel arbitration of the tort lawsuit based on the arbitration clauses contained in the franchise agreements entered into between the franchisee and franchisor. The trial court denied the motion to compel arbitration. The Eighth Circuit reversed, allowing the non-signatory principals to enforce the arbitration agreement and compel the lawsuit to

---

[5] The Missouri Supreme Court has also suggested that a non-signatory may enforce an arbitration agreement if the non-signatory is a third-party beneficiary of the agreement. Nitro Distrib., Inc. v. Dunn, 194 S.W.3d 339, 345 (Mo. banc 2006). Vincent does not argue that he is a third-party beneficiary, nor do we find any support in the record for such a conclusion. To be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party; an incidental benefit is not sufficient. Id. No such intent appears in the SPA.

14

arbitration. The Court first held that a sufficiently close relationship existed between the franchisor, CDWI, and the non-signatory principals because "the tort allegations against the three [principals] all arise out of their conduct while acting as officers of CDWI." Id. at 799. For this reason, the Court concluded that "[e]visceration of the underlying arbitration agreement will be avoided only by allowing the three principals to invoke arbitration." Id. The Court further held that the claims against the three non-signatory principals relied upon, referred to, and presumed the existence of the agreement between the two signatories, CDWI and CD Partners. Importantly, the Court explained that its holding was affected by the *type* of agreement at issue, drawing a distinction between employment agreements and purchase agreements. The Court stated that unlike a purchase agreement, which is a "one-shot transaction where the only act the non-signatory performed for the corporate signatory was that of signing the purchase agreement," the employment agreement at issue in CD Partners "involve[d] an ongoing relationship where signatory CDWI's promises could only be fulfilled by the future conduct of its corporate officers, employees, and agents." Id. at 799-800. For this reason, because the "core" of the dispute involved the conduct of the non-signatories in fulfilling the signatory's promises, the Court held that enforcement of the arbitration agreement was appropriate.

Not only is CD Partners readily distinguishable from the case at hand, but we are further guided by the distinction drawn by the Eighth Circuit between employment agreements and purchase agreements. This distinction follows the First Circuit's reasoning in McCarthy v. Azure, 22 F.3d 351 (1st Cir. 1994). In McCarthy, the Court distinguished between service contracts containing arbitration clauses and purchase agreements, the latter of which was at issue in the case, in holding that the non-signatory could *not* enforce an arbitration agreement against the signatory. The Court explained that the purchase agreement in question was "primarily

15

concerned with a transfer of assets," which the Court deemed an important distinction. McCarthy, 22 F.3d at 357. Similar to the reasoning found in CD Partners, the Court explained that a service contract "contemplates an ongoing relationship in which the firm's promises only can be fulfilled by future (unspecified) acts of its employees or agents stretching well into an uncertain future." Id. Conversely, a purchase agreement consists of only "a one-shot transaction in which the purchaser's obligations are specified and are, essentially, performed in full at the closing, or soon thereafter." Id.

Here, the SPA was a straightforward purchase agreement concerned solely with the one-time transfer of shares. Tucker, David, and Quinn were obligated to transfer their shares of ESI to Electromedico, and Electromedico was obligated to pay the agreed-upon purchase price. The SPA did not provide for any ongoing or additional duties on the part of Electromedico after the sale. Vincent, as Manager of Electromedico, had no future duties or responsibilities with respect to fulfilling the terms of the SPA. Instead, similar to the purchase agreement in McCarthy, the SPA was a "one-shot transaction," the terms of which were fulfilled as soon as the transfer of the ESI shares and payment of the purchase price was complete. Further, and more importantly, Tucker's claims against Vincent do not arise out of or relate to his conduct while acting as an officer or principal of Electromedico (as was the case with the claims against the principals in CD Partners). Instead, the allegations against Vincent arise solely out of his conduct as Tucker's personal accountant. We do not find a sufficiently close relationship between either Vincent and Electromedico with respect to the SPA, or the claims brought by Tucker in this case, that allow Vincent to invoke arbitration under the SPA in the instant matter. Denying Vincent the right to compel Tucker to arbitration on the claims raised in Tucker's petition has no impact on the validity or enforceability of the arbitration agreement between Tucker and Electromedico.

16

We further note that the claims alleged by Tucker in his petition are not based upon and do not rely upon the terms of the SPA. See Riley v. Lucas Lofts Investors, LLC, 412 S.W.3d 285, 291-92 (Mo. App. E.D. 2013) ("a party's tort claim is subject to arbitration only if resolution of the claim requires reference to or construction of the parties' contract"). Tucker's claims against Vincent do not rely on the terms of the written agreement, but are premised on Vincent's alleged failure to comport with his various duties as an *accountant* in rendering advice *prior to* the existence and consummation of the SPA. Although Tucker's petition references the SPA, his claims do not rely on the terms of the SPA. In fact, the specific terms of the SPA are wholly irrelevant to Tucker's malpractice and misrepresentation claims against Vincent. The "core" of Tucker's allegation against Vincent is Vincent's conduct as an accountant, which occurred outside any duties or obligations required of Electromedico under the SPA.

To be sure, an agreement to arbitrate exists between Tucker and Electromedico. But Vincent is not a party to that agreement. While courts recognize some situations in which a non-signatory to an arbitration agreement may invoke the agreement and enforce its terms against a signatory, those circumstances are limited and are not present here. As a non-party to the SPA, Vincent may not claim the benefits of the SPA and seek to enforce its terms against Tucker. The facts before us clearly demonstrate that no agreement to arbitrate disputes has been entered into between Tucker and Vincent. Without such an agreement, arbitration legally may not be compelled. Accordingly, insofar as the trial court's grant of summary judgment was based on the premise that Tucker's claims are subject to mandatory arbitration under the SPA, the trial court erred in so holding.

17

## II. Point Two—Res Judicata

Tucker argues in Point Two that the trial court erred to the extent its grant of summary judgment rested on the premise that Tucker's claims are barred by res judicata. We agree.

The doctrine of res judicata "operates as a bar to the reassertion of a cause of action that has been previously adjudicated in a proceeding between the same parties or those in privity with them." Lauber-Clayton, LLC v. Novus Properties Co., 407 S.W.3d 612, 618 (Mo. App. E.D. 2013). Res judicata is based on the principle that parties "should not be allowed to litigate a claim and then, after an adverse judgment, seek to relitigate the identical claim in a second proceeding." Andes v. Paden, Welch, Martin & Albano, P.C., 897 S.W.2d 19, 21 (Mo. App. W.D. 1995). For res judicata to adhere, "four identities" must occur: (1) identity of the things sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the person for or against whom the claim is made. Lauber-Clayton, LLC, 407 S.W.3d at 618. When those four identities concur, res judicata operates to bar "any claim that was previously litigated between the same parties or those in privity with them." Id. Additionally, if res judicata applies, the doctrine precludes a litigant from bringing "claims that should have been brought in the first suit." Id. However, res judicata does not operate to preclude any later litigation, including those claims that could have been brought, unless the four identities first occur. Id.

Vincent argues that Tucker's claims in his Missouri lawsuit are sufficiently similar to the claims decided in the prior Florida proceedings that the present claims should be barred by res judicata. Vincent alternatively argues that even if the claims are not the same, res judicata nevertheless bars litigation of Tucker's current claims because those claims should have been raised in the Florida proceedings. We are not persuaded.

18

We note two prior proceedings that may potentially bar Tucker's current claims on the basis of res judicata: the Florida arbitration proceeding, which addressed claims between Electromedico and David and Tucker; and the Pinellas County lawsuit, in which David and Tucker brought claims against Vincent.[6] We conclude that neither prior proceeding bars the claims raised by Tucker in his current lawsuit.

First, the Florida arbitration proceeding cannot act as a bar to Tucker's current lawsuit because there lacks the required identity of parties between the actions. "A party is identical, for purposes of res judicata, when it is the same party that litigated the prior suit or when the new party was in privity with the party that litigated the prior suit." Id. at 619. The Florida arbitration proceeding involved claims brought by Electromedico against David and Tucker. Vincent, in his individual capacity, was not a party to the Florida arbitration proceeding. David and Tucker sought leave to amend their pleading in the arbitration proceeding to assert claims against Vincent individually, but leave was never granted. Further, although David and Tucker raised certain affirmative defenses referencing Vincent, Vincent was never added as a party to the arbitration proceeding. Because Tucker's present lawsuit asserts claims solely against Vincent individually, there is no identity of the parties present between the prior Florida arbitration proceeding and Tucker's Missouri lawsuit.

Second, the Pinellas County lawsuit cannot act as a bar to Tucker's Missouri lawsuit because it lacks the identity of the cause of action. In determining whether the identity of the cause of action exists, courts look to "whether the claims arose out of the same act, contract or transaction." Bendis v. Alexander & Alexander, Inc., 916 S.W.2d 213, 217 (Mo. App. W.D.

---

[6] Vincent asserts in his brief that the claims Tucker raised "in his third party complaint in arbitration" also operate to bar Tucker's current claims. The record does not indicate that Tucker filed a third-party complaint during the arbitration proceeding. Tucker filed a motion for leave to file such a complaint, but it does not appear that leave was granted or that Tucker ever filed said complaint.

19

1995). In doing so, the claims are to be construed to include "all of the facts and circumstances which constitute the foundation of a claim." Id. The concept of "'[c]ause of action' does not refer to the *form* of action in which the claim is asserted, but to the *cause for* action, i.e., the underlying facts combined with the law giving the party a *right* to a remedy of one form or another based thereon." Barkley v. Carter Cnty. State Bank, 791 S.W.2d 906, 912 (Mo. App. S.D. 1990). The Pinellas County lawsuit was filed by David and Tucker against Vincent and his accounting firm and asserted claims for professional negligence arising out of Vincent's alleged undervaluation of ESI. The factual basis for the claims in the Pinellas County lawsuit was that Vincent misrepresented to David and Tucker that $1,250,000 was the fair value of ESI, and David and Tucker relied on that advice and entered into the SPA with Electromedico with $1,250,000 as the purchase price. Thus, the professional negligence claims raised in the Pinellas County lawsuit stem from the same factual nucleus—Vincent's alleged misconduct in undervaluing ESI for purposes of the SPA.

Tucker's Missouri lawsuit against Vincent is not premised upon the claim of undervaluation asserted in the Florida action. Instead, Tucker asserts claims of accounting malpractice and negligent misrepresentation based on Vincent's professional advice regarding how a potential sale of ESI could be structured. The factual basis for Tucker's claims is that, before the SPA was entered into, and while a sale of ESI to Vincent was still being considered, Vincent advised Tucker that sale of ESI could not be structured in the way Tucker desired when in reality the transaction could have been so structured. Tucker's claims in the present lawsuit are based on this advice, which Tucker alleges was a misrepresentation by Vincent. With respect to each claim, Tucker alleged that Vincent, as his personal accountant, breached a duty owed to Tucker in two ways: first, by advising Tucker that the sale of ESI could not be structured so that

20

Tucker would transfer his interest in ESI to David, with the subsequent purchase and sale transaction proceeding only between Vincent and David; and second, by omitting to tell Tucker, and concealing from him, that Vincent wanted Tucker to be a participant in the sales transaction because that structure would benefit Vincent. Thus, the claims asserted in Tucker's present lawsuit all arise from the same factual nucleus—Vincent's allegedly erroneous advice regarding the structure of a potential sale of ESI, prior to the existence of the SPA.

It is clear that the claims adjudicated in the Pinellas County lawsuit rest upon a different factual and circumstantial foundation than those found in Tucker's present lawsuit. The underlying facts which gave rise to Tucker's claims in the present lawsuit are entirely different than the underlying facts which gave rise to Tucker's claims in the Pinellas County lawsuit. The facts underlying the prior proceeding and the current proceeding, respectively, took place at different points in time and involved different transactions between Tucker and Vincent. Tucker's present claims involve factual allegations that Vincent rendered erroneous and self-interested advice about the structure of the contemplated sale of ESI *before* the SPA came into existence or had been entered into by the parties. In contrast, the Pinellas County lawsuit involved claims that Vincent undervalued ESI within the context of the SPA, which was already in existence. Further, Tucker's present claims arise solely out of Vincent's alleged misconduct in rendering very specific advice about a single issue, the structure of a potential sale of ESI. The prior proceeding, meanwhile, dealt solely with Vincent's alleged misconduct in determining the value of ESI in order to ascertain an appropriate purchase price for purposes of the SPA. The claims and issues adjudicated in the Pinellas County lawsuit concern a different set of underlying facts than those found in Tucker's Missouri lawsuit. Although both proceedings involve the same parties, the claims in each are based upon separate conduct between Tucker and Vincent

21

which occurred at different points in time. Vincent's argument that there exists an identity of the cause of action between the prior Pinellas County lawsuit and the current proceeding is unavailing.

Res judicata does not adhere and does not act to bar Tucker's current claims. Nor does the doctrine operate to bar Tucker's current claims on the basis that they should have been brought during the Florida proceedings. Res judicata does not operate to preclude any later litigation, including those claims that could have been brought, unless the four identities first occur. Lauber-Clayton, LLC, 407 S.W.3d at 618. Accordingly, insofar as the trial court's grant of summary judgment was based on the premise that Tucker's claims are barred by res judicata, the trial court erred in so holding.

### Conclusion

The judgment of the trial court granting Vincent's motion for summary judgment is reversed and the cause is remanded for proceedings consistent with this opinion. Accordingly, Tucker's third point on appeal is moot.

KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Patricia L. Cohen, J., concurs.