

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| DIANE MAUNE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF NEIL J. MAUNE, | ) ) ) ) | No. ED112669 |
| Respondent, | ) ) | Appeal from the Circuit Court of St. Louis County |
| v. | ) ) | Cause No. 24SL-CC00435 |
| | ) | |
| MARCUS RAICHLE, JR. and THE MAUNE RAICHLE LAW FIRM, | ) ) ) | Honorable Kristine A. Kerr |
| | ) | |
| Appellants. | ) | Filed: November 26, 2024 |

**Introduction**

Appellants Marcus Raichle, Jr. and MR Law Firm appeal the trial court's denial of their motion to compel arbitration and stay proceedings. They raise three points on appeal, arguing that denial of the motion to compel arbitration was error because Decedent and Raichle had an arbitration agreement, they agreed to delegate to an arbitrator threshold issues of whether and which of their claims were subject to the agreement, and they had two independent bases to enforce the arbitration provision. We affirm the trial court's judgment.

**Factual and Procedural Background**

Neil Maune ("Decedent") and Marcus Raichle, Jr. ("Raichle") formed The Maune Raichle Law Firm ("MR Law") as a general partnership in 2009. There was no written partnership agreement, and Decedent and Raichle were the sole partners. In that same year, both partners took out life insurance policies with initial death benefits of $10 million on each policy, both of which listed MR Law as the sole beneficiary. In 2011, both partners joined with three other attorneys to form the law firm Maune Raichle Hartley French & Mudd, LLC ("MRHFM"). Upon creation of the new firm, Decedent and Raichle signed MRHFM's Operating Agreement in their individual capacities and in their corporate capacities as managers of MRHFM. There was no written agreement between MR Law and MRHFM, nor did Decedent or Raichle sign the Operating Agreement on behalf of MR Law. MR Law continued to exist as a general partnership, although they stopped taking on new clients after that time. MRHFM took over the payments of the premiums on both life insurance policies. While Raichle's life insurance policy was changed so as to name MRHFM as the beneficiary rather than MR Law, the beneficiary on Decedent's life insurance policy was never changed from MR Law.

Decedent died on July 16, 2023. Shortly thereafter, Decedent's life insurance policy was paid out to MR Law. On January 29, 2024, Diana Maune, as Personal Representative of the Estate of Neil J. Maune ("Estate"), filed a petition against MR Law and MR Law's general partner Raichle. The petition alleges several claims against MR Law arising out of MR Law's retention of the $10 million proceeds of Decedent Maune's life insurance policy, including tortious interference with contractual rights, tortious interference with a business expectancy, unjust enrichment, and breach of fiduciary duties. The Estate alleges that the life insurance proceeds paid to MR Law should have gone to MRHFM because it paid the premiums on the

policy for over a decade. The Estate further alleges that, under the Operating Agreement, the parties agreed that the life insurance proceeds were to be used to purchase Decedent's ownership interest in MRHFM, but that because the proceeds are being withheld from MRHFM by MR Law, the Estate is only entitled to $1 million under the provision of the Operating Agreement that controls what happens in the event the life insurance proceeds are unavailable to MRHFM.

In response to the Estate's petition, MR Law filed a motion to compel arbitration and stay proceedings, which sought to enforce the arbitration provision in MRHFM's Operating Agreement against the Estate. After hearing arguments, the trial court denied the motion to compel. MR Law filed this interlocutory appeal pursuant to Section 435.440, which states that "an appeal may be taken from…An order denying an application to compel arbitration."[1]

For the sake of clarity, we note that there are seven distinct legal entities involved in this case: MR Law, Raichle in his corporate capacity as general partner of MR Law, Decedent in his corporate capacity as general partner of MR Law, Raichle in his corporate capacity as manager of MRHFM, Decedent in his corporate capacity as manager of MRHFM, Raichle in his individual capacity, and Decedent in his individual capacity. MRHFM is not a party to this case.

### Discussion

In their first point on appeal, Appellants argue that the circuit court erred when it denied their motoin to compel arbitration and stay proceedings because Appellant Raichle entered into the agreement containing the arbitration provision in his individual capacity, thereby making the Operating Agreement applicable to the claims at issue against Raichle. The contract that contains the arbitration provision that Appellants seek to enforce is the Operating Agreement of MRHFM. In their second point on appeal, Appellants argue the trial court erred when it denied the motion

---

[1] All section references are to RSMo (2024).

to compel arbitration because the Operating Agreement contained a delegation clause through which Raichle and Decedent agreed to arbitrate "whether their claims and which claims must be arbitrated." In their third point on appeal, Appellants argue that the trial court erred when it denied the motion to compel arbitration because MR Law has two independent bases to enforce the arbitration provision—that the relationship between Raichle and MR Law is sufficiently close and that the Estate must rely on the terms of the Operating Agreement to bring its claims against MR Law. Because points one and three are dispositive, we only address those points.

In determining whether a motion to compel arbitration should have been granted, this court reviews *de novo*. *Arrowhead Contracting, Inc. v. M.H. Washington, LLC*, 243 S.W.3d 532, 535 (Mo. App. W.D. 2008). *De novo* review affords "no deference to the trial court's findings or determinations." *Tucker v. Vincent*, 471 S.W.3d 787, 793 (Mo. App. E.D. 2015). "When faced with a motion to compel arbitration, the trial court must determine whether a valid arbitration agreement exists and, if so, whether the specific dispute falls within the scope of the arbitration agreement." *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006), *as modified on denial of reh'g* (June 30, 2006). This court applies "the usual rules of state contract law and canons of contract interpretation" when determining whether a valid arbitration agreement exists. *Nitro Distrib., Inc.*, 194 S.W.3d at 345. "If the trial court's ruling on the motion to compel arbitration includes 'factual findings that bear on the existence, scope, or revocability of the arbitration agreement, then we will affirm the factual findings if they are supported by substantial evidence and are not against the weight of the evidence.'" *Pinkerton v. Tech. Educ. Servs., Inc.*, 616 S.W.3d 477, 481 (Mo. App. W.D. 2020) (quoting *Sniezek v. Kansas City Chiefs Football Club*, 402 S.W.3d 580, 583 (Mo. App. W.D. 2013)).

4

Because arbitration is a matter of contract, "it is axiomatic that 'a party cannot be compelled to arbitration unless the party has agreed to do so.'" *Tucker v. Vincent*, 471 S.W.3d 787, 794 (Mo. App. E.D. 2015). "Absent a contract to arbitrate, no party has a unilateral right to impose on another party a requirement of arbitration as the sole procedure for dispute resolution." *Jones v. Paradies*, 380 S.W.3d 13, 17 (Mo. App. E.D. 2012) (quoting *M & I Marshall & Ilsley Bank v. Sader & Garvin, L.L.C.,* 318 S.W.3d 772, 777 (Mo. App. W.D. 2010)). Because a valid contract must exist before an agreement to arbitrate can be enforced, "the first step of our analysis is to determine whether a valid contractual agreement to arbitrate was ever formed between [the parties]." *Tucker*, 471 S.W.3d at 794.

In order for a valid contract to exist there must be a "meeting of the minds" between the parties. *Arrowhead Contracting, Inc. v. M.H. Washington, LLC*, 243 S.W.3d 532, 535 (Mo. App. W.D. 2008). "Only parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract." *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. banc 2007). In denying Appellants' motion to compel arbitration, the trial court reasoned that because MR Law is not a party to the Operating Agreement there was no "meeting of the minds between MR Law and decedent Maune." The trial court further stated that "MR Law cannot force Mrs. Maune into arbitration by relying on a contract to which it is a stranger."

In their briefs, Appellants concede that the trial court's reasoning regarding MR Law was correct, arguing only that the trial court erred by not applying the same reasoning to Raichle and reaching the opposite result. We disagree. While it is true that Raichle and Decedent both signed the Operating Agreement, neither signed in their capacity as general partner of MR Law and there is no written agreement between MR Law and either of its partners. Instead, Decedent and Raichle signed the Operating Agreement in their corporate capacities as members and managers

of the MRHFM law firm and in their individual capacities. The Operating Agreement has no bearing on disputes between MR Law and its partners, even when those partners are also partners of the MRHFM law firm, because neither MR Law nor its general partners are parties to the Operating Agreement. Because they are not parties to the agreement, no valid contract was formed between MR Law, its general partners, and MRHFM law firm, and the arbitration clause in the Operating Agreement cannot be enforced against the Estate.

Nevertheless, Appellants also argue that they fall within both of the limited exceptions outlined in *Tucker v. Vincent*, which explains that

> a non-signatory can enforce an arbitration clause against a signatory (1) 'when the relationship between the signatory and non-signatory defendants is sufficiently close that only by permitting the non-signatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided;' or (2) 'when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory.'

471 S.W.3d at 796 (quoting *CD Partners, LLC v. Grizzle,* 424 F.3d 795, 798 (8th Cir. 2005)). We find that the first exception is inapplicable here. The relationship between the parties is not sufficiently close to make invoking the arbitration provision necessary to avoid eviscerating the underlying agreement. The fact that MR Law's general partner is the same person who signed MRHFM's Operating Agreement in his individual capacity and in his capacity as manager of MRHFM is insufficient to show that MRHFM's agreement would be eviscerated if the provision were not enforced. Missouri law recognizes the distinction between different legal capacities. *See Paradies*, 380 S.W.3d at 17 ("defendants' signatures, in their corporate capacity, do not bind them to the arbitration agreement as individuals"); *Tucker*, 471 S.W.3d at 795 ("It is well-settled that a person clearly signing a contract in a corporate capacity on behalf of a disclosed principal does not become a party, in his individual capacity, to the agreement"). Raichle, in his corporate

capacity as general partner of MR Law, is a distinct entity from Raichle in his individual or corporate capacity as manager of MRHFM. The respective legal identities are unrelated. Furthermore, MRHFM's arbitration agreement remains applicable to any disputes between MRHFM and its signatories, including between Raichle, Maune, and MRHFM, and is not eviscerated by the trial court's decision not to compel arbitration.

The second exception is equally inapplicable to this case. Here, the signatory is not required to rely on the terms of the agreement in order to assert claims against the non-signatory. The claims asserted by the Estate rely on the alleged wrongful conduct of MR Law and do not arise out of MRHFM's operating agreement. *See Tucker*, 471 S.W.3d at 797–98 ("Tucker's claims against Vincent do not arise out of or relate to his conduct while acting as an officer or principal of Electromedico... Instead, the allegations against Vincent arise solely out of his conduct as Tucker's personal accountant"). Contrary to Appellant's argument applying *Barton Enterprises, Inc. v. Cardinal Health, Inc.*, No. 4:10 CV 324 DDN, 2010 WL 2132744, at *4 (E.D. Mo. May 27, 2010), the Estate's claims do not depend upon an interpretation of the Operating Agreement. Instead, in this case, we find the dispute at issue singularly concerns the business relationship between MR Law and Decedent and that relationship's impact on his estate. Neither MRHFM's conduct nor its Operating Agreement are at issue in the underlying case—the Estate's citations to the Operating Agreement provide context for the injuries the Estate allegedly suffered as a result of MR Law's actions, but not the legal basis for relief—and the purpose of citing to the Operating Agreement was not to show the MR Law was in breach of that agreement. References to the Operating Agreement, though numerous, are insufficient to show that the Estate "*must* rely on the terms of the written agreement in asserting its claims against the non-signatory."

7

**Conclusion**

We hold that, since there is no contract between MR Law and the Estate, MR Law cannot compel the Estate to arbitrate its claims per the arbitration provision in the Operating Agreement because they never agreed to do so. Further, the relationship between MR Law and the Estate was not close enough so as to eviscerate the agreement to which MR Law is not a party. Finally, the Estate's claims arise out of and rely on the alleged tortious conduct of MR Law, which is independent of any term in the Operating Agreement.

For the foregoing reasons, we affirm the trial court's judgment.

_____
Renée D. Hardin-Tammons, J.

Philip M. Hess, P.J., and
Gary M. Gaertner, Jr., J., concur.