**Robert BULL, Respondent,**

v.

**Mark TORBETT, Appellant.**

**WD 79919**

Missouri Court of Appeals, Western District.

Opinion filed: June 27, 2017

Application for Transfer to Supreme Court Denied August 1, 2017

Application for Transfer to Supreme Court Denied October 31, 2017

Patrick R. Miller, for Respondent.

Don R. Lolli, Kansas City, for Appellant.

Matthew W. Geary, Kansas City, Co-counsel for Appellant.

Before Division Three: Anthony Rex Gabbert, Presiding Judge, Victor C. Howard, Judge and Cynthia L. Martin, Judge

## VICTOR C. HOWARD, JUDGE

Mark Torbett appeals the Jackson County Circuit Court's denial of his motion to compel arbitration and dismiss him for lack of personal jurisdiction. He raises three points on appeal complaining that he should be able to enforce the arbitration agreement as a non-signatory because of

equitable estoppel and agency theory. The judgment is reversed and remanded.

## Facts

On March 14, 2016, Robert and Linda Bull (the Bulls) filed a Second Amended Petition in a lawsuit against the Real Estate Store USA (TRES) and Mark Torbett (the founder of the Real Estate Store). The Bulls alleged one count of fraud, one count of negligent misrepresentation, and one count of violating the Missouri Merchandising Practices Act. They alleged the following factual situation:

The Bulls live in California. Robert Bull was referred to Torbett and TRES following his attendance at a wealth management seminar. Torbett and TRES are located in Utah.

Torbett told Robert Bull that real estate was a safe investment, generating a return on investment through the payment of rents by tenants occupying the properties. Torbett told Robert Bull that TRES was a "one stop shop" where he could locate and purchase residential real estate for investment. Torbett told Robert Bull that TRES would assist the Bulls with all aspects of learning the business of owning residential real estate. Torbett told Robert Bull that TRES would identify and sell the Bulls property that was currently generating revenue with a reliable tenant. Torbett encouraged Robert Bull to consider him a consultant who would educate the Bulls and assist the Bulls in being successful in the residential real estate industry.

Torbett referred the Bulls to Horizon Trust Company[1] (Horizon) to establish a self-directed IRA to purchase property from TRES. Based on Torbett's recommendation, the Bulls deposited funds with Horizon. Horizon is located in Albuquerque, New Mexico.

In reliance on Torbett's statements, the Bulls agreed to purchase residential properties located in Jackson County, Missouri. The properties were identified by Torbett from TRES's inventory. Torbett represented the properties were in good condition with good, reliable tenants. Torbett represented the properties were fully insured and further stated premiums for the first year's insurance were pre-paid and all policies were transferrable to the Bulls.

Torbett represented that TRES had acquired insurance from AON, a viable insurance carrier covering rental revenues from the properties for the first year. If the tenant did not pay, the Bulls need only submit a claim to the insurance carrier to cover the unpaid rent. The rental insurance premium was pre-paid and coverage was transferrable to the Bulls. Torbett represented the homes were occupied by AON qualified tenants.

The sale price of the properties was determined by Torbett and TRES. When Robert Bull inquired regarding the value of the properties, Torbett advised the price was not material. Instead, the Bulls need only concern themselves with the cash flow the property would generate. Torbett also said the properties were priced by Torbett and TRES for purchase by the Bulls at their fair market value. Torbett provided spread sheets that represented historical performance of properties, including rents received and expenses paid.

Through Horizon, the Bulls purchased two properties in Jackson County, Missouri. Torbett said the Bulls' purchase of the properties was a prudent investment even though the Bulls were out of town investors. Torbett represented that the

1. Horizon trust Company was named in the litigation as a custodian pursuant to a written agreement between Horizon Trust Company and the Bulls.

Bulls' ownership of the properties would yield monthly income and involve little to no day to day involvement. The Bulls engaged Prime Realty to manage the properties upon the enthusiastic recommendation of Torbett.

Following purchase of the properties, the Bulls soon learned the condition of the properties was not as represented by Torbett and TRES. The properties were occupied by non-paying tenants. The Bulls incurred substantial costs to evict the non-paying tenants who also caused substantial damage to the properties.

The Bulls incurred substantial costs to make repairs to the properties to attract new tenants so the properties could generate revenue. While attempting to attract new tenants, the Bulls learned from Prime Realty that the properties would not lease at the rates Torbett and TRES represented the properties were capable of earning. Prime Realty encouraged the Bulls to lower the monthly rental rates to attract new renters.

The Bulls' initial claims for rental income coverage were denied by AON because the tenants in the properties at the time of the Bulls' purchase were not qualified. Torbett and TRES had failed to perform adequate background checks on the tenants or misrepresented the results of background checks of the tenants when applying for coverage from AON. The Bulls' insurance claims for property damage were also denied because the insurance coverage acquired by Torbett and TRES does not cover damage by tenants.

The Bulls discovered the purchase price paid to acquire each property was substantially higher than fair market value. They learned that the first property purchased from TRES on July 30, 2013, for $60,694 was apparently purchased by Torbett and TRES from Coral Properties on July 24, 2013 for $38,000. The second property purchased from TRES on July 25, 2013 for $60,694 was apparently purchased by Torbett and TRES from Coral Properties on July 24, 2013 for $40,000.

John Wheeler, the principal of Prime Realty, is also the principal of Coral Properties. Review of eviction records shows from February 1, 2014 through March 2016, Prime Realty has filed nine other eviction cases in addition to those for the Bulls naming parties holding property through Horizon. The Bulls alleged that Torbett, TRES, and Prime Realty "appear to be working together to sell overpriced residential real estate to out-of-town investors at higher than market values. With elevated sale revenues enjoyed by [Torbett and TRES] and long term management fees going to Prime Realty."

Torbett and TRES filed their Answer on March 23, 2016. They denied liability and requested that the trial court dismiss the petition or enter judgment in their favor. Torbett and TRES filed a motion to compel arbitration on April 22, 2016. The motion to compel alleged that all of the Bulls' disputes and claims related to the purchase of two parcels of real estate and are thereby subject to the mandatory arbitration clause contained in the Real Estate Purchase Contracts [REPCs]. The arbitration clause at issue stated:

> Arbitration. The Parties agree that any dispute or claim relating to this Real Estate Purchase Contract shall be submitted to binding arbitration under the Real Estate Industry Arbitration Rules of the American Arbitration Association. The parties agree that the costs if such proceedings shall be reimbursed to the prevailing party, including reasonable attorneys' fees and costs. The parties agree arbitration shall be conducted in Salt Lake County, State of Utah.

The Bulls filed suggestions in opposition to the motion to compel arbitration. They agreed a valid arbitration agreement existed but alleged their claims against Torbett extended beyond the mere purchase of real estate. They also alleged that Torbett was not a party to the Real Estate Purchase Contracts and, therefore, cannot compel arbitration.

Torbett and TRES filed reply suggestions on May 19, 2016. They filed supplemental suggestions in support of the motion to compel on June 22, 2016. Torbett also filed a motion to dismiss for lack of personal jurisdiction.

The Bulls filed a response to the motion to dismiss on July 6, 2016. They dismissed their claims against TRES on July 7, 2016. Only their claims against Torbett remained. They also filed supplemental suggestions in opposition of the motion to compel on July 7, 2016. The Bulls filed a motion for leave to add John Wheeler as a defendant and to file their third amended petition on July 8, 2016.

The trial court denied the motion to compel arbitration and dismiss on July 21, 2016. It found:

**Motion to Compel Arbitration**

State courts are bound by the provisions of the Federal Arbitration Act in cases involving interstate commerce. *VCW, Inc. v. Mutual Risk Management, Ltd.*, 46 S.W.3d 118, 121 (Mo. App. 2001). The Court notes this case involves interstate commerce because Horizon Trust Company is located in New Mexico and purchased two parcels of real estate in Kansas City, Missouri from The Real Estate Store located in Utah for the benefit of two self-directed trusts whose beneficiaries live in California. As such, this dispute concerns interstate commerce.

When dealing with a motion to compel arbitration, the Court must determine (1) whether a valid arbitration agreement exists and if so, (2) determine if the dispute falls within the scope of the arbitration agreement. *Ellis v. JF Enterprises, LLC*, 482 S.W.3d 417, 419 (Mo. 2016). It is axiomatic that "a party cannot be compelled to arbitration unless the party has agreed to do so." *Tucker v. Vincent*, 471 S.W.3d 787, 794 (Mo. Ct. App. 2015). The FAA requires courts stay proceedings when the dispute is subject to an agreement to arbitrate. 9 U.S.C. § 3.

The only arbitration agreement before this Court is located within the Real Estate Purchase Contracts signed by Robert Bull[2] and Torbett in *his corporate capacity* on behalf of The Real Estate Store. There is no indication that Bull and Torbett entered into any agreement to arbitrate any individual claims they might have against one another. The Eighth Circuit has explained when a non-signatory can enforce an arbitration clause against a signatory:

(1) when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided or (2) when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory.

*Tucker v. Vincent*, 471 S.W.3d 787, 796 (2015) (quoting *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir.

---

**2.** This footnote appears in the judgment: The parties agree it is unclear at this point whether Linda Bull signed the agreement to arbitrate.

2005)). The Court finds neither of these situations is present in this case. Nothing suggests the relationship between The Real Estate Store and Torbett is so close that only by permitting Torbett to invoke arbitration may evisceration of the underlying arbitration agreement be avoided. This action is entirely distinct from the actions that could have been brought under the Real Estate Purchase Contracts.

Further, Plaintiffs' fraud claims do not rest on statements made in the Real Estate Purchase Contracts but rest on the multitude of fraudulent statements allegedly made by Torbett prior to the execution of the contracts. Torbett allegedly convinced Plaintiffs that residential real estate was a safe investment that would result in long-term cash flow, alleged the properties were in good condition, represented the properties were fully insured and further stated premiums for the first year's insurance were pre-paid and transferable to Plaintiffs, and induced them to move their funds from one investment that was not losing money to another investment, resulting in substantial loss.

It is of note that Courts have drawn a distinction between a "one-shot transaction where the only act the non-signatory performed for the corporate signatory was that of signing the purchase agreement" and transactions that require additional actions in the future. *Id.* at 797 (quoting *CD Partners*, 424 F.3d at 799). In *Tucker*, Plaintiffs and a corporation signed an agreement to arbitrate. *Id.* at 796. The corporate officer who signed on behalf of the corporation tried to compel Plaintiffs to arbitrate. *Id.* at 797. In denying the motion to compel, the Court noted the purchase agreement containing the arbitration agreement was a "one-shot transaction" where the terms of the contract are fulfilled immediately after the sale. *Id.* The Court further noted Plaintiffs' claims "do not arise out of or relate to his conduct while acting as an officer or principal" and are separate from and did not rely on the terms of the sales purchase agreement. *Id.* at 798.

Similarly, the contracts in this case involve the "one-shot transaction" of selling real estate. Torbett has no ongoing duties to fulfill and Plaintiffs claims do not relate to Torbett's conduct while acting as a corporate officer of The Real Estate Store. Denying the motion to compel simply has no bearing on the enforceability of the arbitration agreement between The Real Estate Store and Plaintiffs.

The Court finds Torbett cannot invoke the application of the arbitration clause because he was not a signatory and party to the Real Estate Purchase Contracts. The court further finds Plaintiffs and Torbett did not have an agreement to arbitrate any individual claims they might have against one another.

Torbett now appeals to this court.[3]

### Standard of Review

 "The judgment of the trial court is affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Stubblefield v. Best Cars KC, Inc.*, 506 S.W.3d 377, 379 (Mo. App. W.D. 2016).

---

**3.** The trial court also found that it had personal jurisdiction over Torbett through the Missouri's long-arm statute and a finding of sufficient minimum contacts with Jackson County, Missouri. Torbett does not challenge this on appeal. Further, all proceedings in the underlying case were stayed pending this appeal.

"Appellate review of the denial of a motion to compel arbitration is *de novo.*" *Id.*

## Analysis

■ "The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. (2006), governs the applicability and enforceability of arbitration agreements in all contracts involving interstate commerce." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 805 (Mo. banc 2015). "Section 2 extends the scope of the FAA to any contract evidencing a transaction involving commerce," *Id.* (quoting 9 U.S.C. § 2). "Section 1 defines 'commerce' as 'commerce among the several States.' " *Id.* (quoting 9 U.S.C. § 1). "The United States Supreme Court has construed this language broadly, stating ... the FAA encompasses a wider range of transactions than those actually in commerce—that is, within the flow of interstate commerce." *Id.* (internal citation omitted). "The Supreme Court further has held that the FAA applies even when, for example, an arbitration agreement is executed in a single state by residents of that state if one of the parties to the agreement engages in business in multiple states." *Id.*

Horizon is located in New Mexico and purchased two parcels of real estate in Missouri from a company located in Utah for the benefit of two self-directed trusts whose beneficiaries live in California. Horizon's business included buying and selling products across state lines. The money from the purchased real estate moved across state lines. This contract involves interstate commerce.

Torbett signed the REPCs as a managing member of TRES. He did not sign them in his personal capacity. The Bulls also did not sign the REPCs in their personal capacity. Instead, Robert Bull signed them as custodian of his and wife's self-directed IRAs. The Bulls and Horizon are suing Torbett in his personal capacity, not as an agent of TRES.

■ Torbett agrees that he is not a signatory to the REPC which contains the arbitration clause. He argues on appeal, however, that he should be able to enforce the arbitration clause as a nonsignatory. He presents in three points three reasons he should be able to compel arbitration. He says in his brief that his first two points raise issues of equitable estoppel and his third point is based on agency theory. *See PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 834-35 (8th Cir. 2010).

■ A non-signatory can enforce an arbitration clause against a signatory in some situations. These include "(1) when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided;" and "(2) when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory." *Tucker v. Vincent*, 471 S.W.3d 787, 796 (Mo. App. E.D. 2015) (internal quotations omitted). "The estoppel theory ... is most often applied in cases where a plaintiff alleges that a defendant is liable under the terms of a contract, even though the defendant was a non-signatory to the contract." *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 350 (Mo. banc 2006). "These allegations might be made, for instance, in cases where ... the defendant/non-signatory was an agent or alter ego of a signatory." *Id.* "[A] party cannot avoid the language of an arbitration provision by casting its complaint in tort." *Riley v. Lucas Lofts Inv'rs, LLC*, 412 S.W.3d 285, 291 (Mo. App. E.D. 2013).

In essence, the Bulls frame this case as two individuals suing a third individual for harm separate from and unrelated to TRES and the REPCs. This argument is unavailing. The Bulls initially brought this suit in their personal capacity against Torbett and TRES. Torbett and TRES filed a motion to dismiss claiming that Horizon is the real party in interest because Horizon is the owner of the two properties at issue. Presumably in response to this argument, the Bulls filed a Second Amended Petition. In this petition, Horizon is also a plaintiff.

Next, TRES and Torbett filed a motion to compel arbitration. In response, the Bulls dismissed TRES from the petition, leaving claims only against Torbett in his personal capacity. They now argue that Torbett should not be allowed to enforce the broadly worded arbitration clause in the REPCs which states that "... *any* dispute or claim *relating* to this Real Estate Purchase Contract shall be submitted to binding arbitration...." (emphasis added).

The REPCs state in relevant portions:

2. CONDITION OF PROPERTY, "AS IS," and "WITH ALL FAULTS" PURCHASE. Buyer acknowledges and agrees that Seller has not made any and hereby specifically disclaims any warranty, guaranty, or representation, oral or written, past, present or future, of, as to, or concerning: ... (ii) the manner, constructions, condition, quality, the state of repair or lack of repair of any part of the Property ... (v) the income, if any, to be derived from the Property....

6.1 Acknowledgement of Defects. Buyer understands and acknowledges that there may be certain defects in or about the Property.... Buyer acknowledges and agrees that the Purchase Price reflects the fact that Seller has little, if any, information regarding the condition of the Property and reflects a significant likelihood that there may be significant defects in the Property.... .

6.2 Due Diligence. Buyer has performed all desired due diligence with respect to the property including inspections and examinations. Additionally, Buyer has had the opportunity to ask any and all questions of Seller or Buyer's financial, real estate, and legal consultants, if any, regarding the Property. Accordingly, Buyer has all the information Buyer desires to make an informed decision to purchase the Property.

7. Entire Agreement. This REPC contains the entire agreement between the parties with respect to the subject matter of this REPC and supersedes all prior understanding, agreements, representations and warranties, if any. If you, as Buyer, believe Seller or some third party affiliated with Seller has made any oral or written statements or promises to you regarding the Property and such statements or promises are not expressly written into this REPC (each a "Nonbinding Statement"), you cannot rely on such statements or promises as they will not be a part of this REPC and will not be binding upon Seller. If your decision to purchase the Property was or is based, in part or in while, on any Nonbinding Statement, you should seriously reconsider whether to purchase the Property since no Nonbinding Statement will be performed by Seller or any third party.

The Bulls allege that Torbett made claims about the properties that were not true and omitted pertinent details about the properties. They claim they were damaged because they: paid more than fair market value for the properties; had to evict tenants from the properties; had to repair the properties; did not receive the promised cash flow from the properties; did not receive the benefit of promised insurance coverage; and put their money in Horizon

to purchase the properties. All of these claims result from the Bulls purchasing the properties. They all relate to the ownership of the properties which resulted from the execution of the REPCs.

The Bulls allege that Torbett made representations to Robert Bull that he would educate, mentor and coach him through the process of purchasing and owning residential real estate. The damage resulting from reliance on these statements, however, was the ownership of properties that fell short of what was allegedly promised. Thus, this claim also relates to the REPCs.

The Bulls also claim that they were not a party to the arbitration agreement in their personal capacity and thus should not be compelled to arbitrate. The damage alleged by the Bulls stems from the purchase of the properties. This is why they joined Horizon as a plaintiff. The Bulls sustained alleged damaged through Horizon when it purchased the properties. Horizon is a party to the arbitration agreement.

Moreover, Torbett was acting as an agent of TRES. The Bulls focus on Torbett's statements prior to the execution of the REPCs. Torbett is the founder of and managing member of TRES. He was acting on behalf of TRES at all times. The Bulls do not claim that Torbett hid his association with TRES. They acknowledge that he interacted with them as the founder and manager of TRES. His actions were geared toward the Bulls purchasing property from TRES.

In denying the motion to compel arbitration, the trial court emphasized language in *Tucker* regarding whether the contract containing the arbitration clause was a one shot transaction or whether it contemplated an ongoing relationship such as in a service contract. This is just one of several factors the *Tucker* court examined, though. In *Tucker*, the court noted that the claims alleged in the petition were not based upon

and did not rely upon the terms of the contract. 471 S.W.3d 798 (citing *Riley,* 412 S.W.3d at 291–92 ("a party's tort claim is subject to arbitration only if resolution of the claim requires reference to or construction of the parties' contract" and finding that resolution of the plaintiff's tort claims did not require an examination of the obligations of plaintiff and defendant under the contract). The court in *Tucker* found that the terms of the contract were "wholly irrelevant" to the claims alleged in the petition. *Id.* The court in *Tucker* also found that the claims against the nonsignatory did not "not arise out of or relate to his conduct while acting as an officer or principal of the company for which he worked." *Id.* at 797. In this case, the claims are based upon the contract and they do arise out of Torbett's conduct while acting as an officer of TRES.

There is some argument in the Bulls' brief that they were fraudulently induced to execute the REPCs. The Bulls have not brought an action for fraudulent inducement, though. They are not trying to undo the contracts. Instead, they are seeking actual damages and punitive damages. They are trying to obtain the bargain they thought they were getting when they executed the REPCs and to punish Torbett (and his company TRES) for allegedly lying to them.

Finally, the Bulls claim that Torbett waived his right to arbitrate. They note that arbitration was not raised in Torbett's answer to the first petition or in the answer to the second amended petition. "Waiver results from a party's substantial participation in litigation to a point inconsistent with an intent to arbitrate which results in prejudice to the other party." *McIntosh v. Tenet Health Sys. Hosps., Inc./Lutheran Med. Ctr.,* 48 S.W.3d 85, 90 (Mo. App. E.D. 2001) (internal quotation omitted). "[D]elay in seeking to compel arbitration insufficient to estab-

lish prejudice." *Id.* "Prejudice, however, may result from delay and a moving party's trial-oriented activity." *Id.* Horizon, the real party in interest, was not a party to this case until plaintiffs filed the Second Amended Petition on March 14, 2016. Torbett and TRES filed their Answer to the Second Amended Petition on March 23, 2016. They filed a motion to compel arbitration less than a month later on April 22, 2016. The Bulls do not adequately support their assertion of waiver with facts from this case that demonstrate prejudice. We find that Torbett did not waive his right to arbitrate.

### Conclusion

The judgment is reversed, and the cause is hereby remanded to the circuit court for further proceedings consistent with this opinion.[4]

All concur.

4. *See Shelter Prods., Inc. v. OMNI Constr. Co., Inc.,* 479 S.W.3d 189, 195 (Mo. App. W.D. 2016) (noting the FAA does not give courts the power to compel arbitration but instead gives courts the power to stay proceedings pending arbitration).